# WASHINGTON NATIONAL BUILDING AND LOAN ASSOCIATION OF WASHINGTON, D. C.

### *v.*

## FISKE.

---

BUILDING ASSOCIATIONS; ACCOUNTING; RETROACTIVE LEGISLATION.

1. Where a building association mortgage contained a provision that the borrower, instead of paying the usual premium — which is a sum of money to be paid for the loan in advance — was to pay

monthly, during the continuance of the mortgage, a specified sum called premium, in addition to the legal rate of interest, in an accounting between the association and such member, such sums so paid being usurious payments, should be charged as payments on account of the principal debt; *reaffirming* and *following* Loan and Construction Co. v. Baker, 19 App. D. C. 1.

2. Section 692 of the code, ·providing that premiums to be charged by building associations, as organized thereunder, shall not be deemed usurious, is not retroactive, and does not affect the right of a borrower from a building association to redeem his mortgaged property from a loan, where such right, by reason of a tender of the amount due, existed before the code went into effect.

No. 1212. Submitted October 22, 1902. Decided November 5, 1902.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit in equity against a building association to enjoin a sale under a mortgage and to compel a release of such mortgage. *Affirmed.*

The COURT in the opinion stated the case as follows:

On September 1, 1898, the appellees, Bertha L. Fiske and Joseph H. Fiske, her husband, .residents of this city, although in a certain paper in this cause describing themselves as residents of the village of Sligo, in Montgomery county, in the State of Maryland, in which Bertha L. Fiske was the owner, or had contracted to become the purchaser, of a tract of land, evidently as preliminary to the procurement of a loan of money on the said tract, although the transaction is sought in some measure to be disguised, applied for membership in the appellant company, The Washington National Building and Loan Association, a body corporate, which, notwithstanding its name, had been incorporated under the laws of the State of Virginia, but which had its main office and transacted its business in this city. The application was allowed. The loan sought to be secured was the sum of $3,000. Thirty shares of the stock of the association, intended to be of the par value of $100 a share at maturity,

or $3,000 in all, but upon which nothing was paid at the
time, were allotted to them; and forthwith they reassigned
the same to the association, nominally as security for the pro-
posed loan, and also as security for the same executed and
delivered to the association a mortgage upon the land in
Montgomery county, Maryland, which was duly recorded in
said county.

The condition of this mortgage was substantially the usual
one in such cases,— that the mortgage should be void if the
mortgagors paid to the association in each and every month
the sum of thirty cents on each share of stock as dues, the
sum of fifty cents on each share as interest, and the sum of
fifty cents on each share as premium, the monthly premium,
however, being diminishable at the rate of ten per cent each
successive year; and if the mortgagor should pay all taxes
and assessments on the mortgaged property; should obey all
the regulations and by-laws of the association; should pay
fines and penalties that should be assessed against them; and
should keep the buildings insured; otherwise that the mort-
gage should remain in full force and effect. It was cove-
nanted in it that payments were to be made as provided until
such time as the shares of stock should become fully matured,
that is, become of the par value of $100 a share, but not for
a longer period than 144 months from the date of the stock;
and that, in the event that the stock should fail to mature on
or before the expiration of such 144 months, then interest at
the rate of six per cent on the original amount of the loan
should continue to be paid monthly until the stock should
mature, when all payments should cease and the mortgage
should be canceled. Provision for sale of the property was
made in the event of any default on the part of the mort-
gagors.

The by-laws of the association provided for the withdrawal
or cancellation of stock upon due notice and the payment of
the loan, or advance, as it is there called. Article VII,
Sec. 6, of the by-laws, which contains the schedule of allow-
ances to be made for such stock on withdrawal, provides what
may be called a sliding scale of values. The result of it is —

for it is not necessary to state it here in detail — that, upon withdrawal of stock, which means withdrawal from the association and settlement of accounts with it, the so-called member is to be charged with the amount of the loan to him, and he is to be credited with the value of his stock according to the schedule.

On February 26, 1901, the appellees made their last payment to the association under their contract; and there seems to have been no default up to that time. At or about the same date they gave the required notice of sixty days of their intention to withdraw.; and on or about May 5, 1901, tendered to the secretary of the association the sum of $2,477.50, which they assumed to be the amount then due from them to the association. This the secretary declined to receive and claimed that the sum due was $2,928.50, which was $451 more than the appellees admitted. This, therefore, is the amount in controversy.

Thereupon, there having been apparently some expression of purpose on the part of the association to foreclose the mortgage, the appellees instituted the present proceedings by filing their bill in equity in the Supreme Court of the District for an accounting and to restrain the threatened sale, and for a release of the mortgage upon payment by the complainants of the amount to be found due. After answer by the association, the court, apparently with the consent of parties, referred the cause to the auditor to take testimony and state the account between the parties. The order of reference was entered on November 11, 1901; and the auditor seems to have taken up the case quite promptly, for all the hearings appear to have been had in the months of November and December of 1901, although his report was not filed until January 13, 1902. In his report he found the amount due from the appellees to the association to be, on May 5, 1901, the date of the tender made by the appellees, as above stated, the sum of $2,464.73, which was $12.77 less than the amount of the tender.

Thereupon exceptions were filed to the report by the association; and at the same time a notice was made to refer the

cause back to the auditor, based on the ground that the new code of law, which had come into effect on and after January 1, 1902, had made important changes in the law relating to building associations, inasmuch as it legalized their arrangements for the taking of premiums, previously regarded as constituting usury.

The court refused the motion to refer the cause back to the auditor, overruled the exceptions, confirmed the report, and entered a decree substantially in accord with the prayer of the bill of complaint, conditioned upon the payment by the complainants to the defendant association within twenty days thereafter of the sum found due by the auditor. From this decree the association has appealed to this court.

*Mr. Jackson H. Ralston* and *Mr. Frederick L. Siddons* for the appellant.

*Mr. M. D. Rosenberg, Mr. Alexander Wolf,* and *Mr. D. W. Baker* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The principal, indeed the only question in this case is as to the proper rule for stating the account between the parties. Confessedly the auditor has stated it in accordance with the rule laid down by this court in the case of *The Middle States Loan, Building and Construction Company* v. *Baker,* 19 App. D. C. 1; and it is conceded on behalf of the appellant that this case falls within the principle of that one, unless, as it is claimed, it can be differentiated therefrom by what is here assumed to be the fact that the payments to be made in the present case are made to depend upon a contingency, and not upon the happening of a certain event, and that therefore, according to the rule stated by the Supreme Court of the United States in the cases of *Spain* v. *Hamilton,* 1 Wall. 604, and *Bedford* v. *Eastern Building and Loan Association,* 181 U. S. 227, the contract between the parties was not of a usurious character, such as to entitle the appellees to have the payments designated as monthly premiums

charged as payments by the appellees on the loan.   But we fail to find any substantial difference in principle between the two cases.   The features that enter into the accounting are the same in both; and it would, therefore, serve no useful purpose to review the question at any length here.

The attempt of counsel for the appellant association is not so much to distinguish this from the Baker case as to show that the decision in the Baker case was antagonistic to the opinion of the Supreme Court of the United States in the case of *Bedford* v. *Eastern Building and Loan Association,* 181 U. S. 227.   We find no such antagonism.   The facts of that case were very different from this.   They are not fully stated in the report of the case; but sufficient appears to show that the subscribers to the stock of the association remained actual stockholders until the end, unless they elected in the meantime to withdraw their stock; that the mortgage contract was a separate and distinct thing, wherein notes were given for the indebtedness to be paid as they matured; and that the pledge of the stock, which accompanied the mortgage, was merely as *collateral security,* and not in effect a transfer of it to the company, with which, as we said in the case of *Armstrong* v. *Building and Loan Association,* 15 App. D. C. 1, it served merely as a measure of the payments to be made. The stockholder did not cease to be a stockholder by becoming a debtor to the association.   It was stipulated that the contract should be performed in the State of New York, under the laws of which the association had been incorporated, where it actually had its principal office, and by the laws of which the contract was valid.   In a suit by the association for foreclosure of the mortgage, which was on property in the State of Tennessee, where the mortgagor resided, certain legislation of this latter State, subsequent to the time of the execution of the contract, and with which the association had not fully complied, was relied on to defeat the demand of the association.   The principal question in the case was that of the validity of this legislation as affecting the contract between the parties.   It was held that it did not affect it; and that, as to the claim of usury, which was also advanced by the defendant, the contract being good in the State of New

York, where it was to be performed, should be held good also in Tennessee, and that the assignment of the stock in connection with the mortgage was not in effect an absolute assignment of it, but in reality as collateral security, leaving the mortgagor still a stockholder in good faith and to all legal intents and purposes. This seems to us to make a very different case from that of *The Middle States, etc., Company* v. *Baker,* 19 App. D. C. 1, and from that now before us, and to leave our ruling in the Baker case unaffected. We find no reason to change that ruling.

2. It seems to have been thought by counsel that the adoption of the new code of law of the District, whereby the incorporation in this jurisdiction was authorized of building associations, with a system of dues, premiums and interest taken out of the operation of the statutes of usury (code, Sec. 692), had some retroactive effect on the rights of the parties to this cause. But we cannot regard this proposition as one that need be seriously considered. The section relied on, even if applicable at all, is not retroactive, either in its letter or its spirit; and even if it had been distinctively so, it is too well settled to need elaboration from us, that such legislation could not be construed to disturb vested rights. The right of the appellees to be released from the obligation of their mortgage became vested and complete when they made their tender on May 5, 1901; and no subsequent legislation could in any manner validly impair that right. The question is not, as seems to be claimed by counsel for the appellant, whether the appellees had a vested right in the continuation of the usury laws, as they then existed, which no one claims; but whether, on May 5, 1901, when they made their tender, or on June 14, 1901, when they filed their bill of complaint, they had a vested right to redeem their property from the mortgage upon it. About this we entertain no doubt whatever.

It is our opinion that the auditor stated the account in this case correctly, and that the decree of the Supreme Court of the District of Columbia in the premises was right and just and should be *affirmed, with costs. And it is so ordered.*